# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

DAWN K.,

 *Plaintiff,*

v.

COMMISSIONER OF SOCIAL
SECURITY,

 *Defendant.*

Case No. 1:25-cv-01316-RLH

## ORDER & OPINION

Plaintiff Dawn K. ("Dawn") filed this suit to challenge an administrative law judge's finding that she was not disabled under the Social Security Act and thus ineligible to receive disability benefits. This parties have consented to final disposition of this case by a U.S. magistrate judge. Because Dawn has not offered a valid reason to overturn the ALJ's decision, the Court affirms.

## LEGAL STANDARD

### I. The Social Security Act

The Social Security Act—and the regulations adopted under it—explain in detail who is eligible to receive social security benefits. To qualify, a claimant must be sixty-five years of age, blind, or disabled. 20 C.F.R. § 416.202(a)(1)–(3). A claimant is disabled if she cannot "do any substantial gainful activity" because she suffers from "any medically determinable physical or mental impairment" that is either life-threatening or chronic. 42 U.S.C. § 423(d)(1)(A).

To implement that definition, the Social Security Administration has developed a five-step evaluation process. *See* 20 C.F.R. § 416.920(a)(1). The steps proceed sequentially:

**Step One.** Is the claimant currently engaged in substantial gainful activity?

**Step Two.** Does the claimant have a severe mental or physical impairment—i.e., an impairment that significantly limits their ability to do basic work activities—or a combination of them?

**Step Three.** Does the mental or physical impairment appear on an enumerated list (called "listings")? If not, is it nonetheless medically equal to one of those listings?

**RFC Assessment.** What is the claimant's residual functional capacity (RFC)—that is, the most they can still do despite their limitations?

**Step Four.** Based on the claimant's RFC, can they perform their past work?

**Step Five.** Based on the claimant's RFC, can they perform other work?

*See id.* § 416.920(a)(4)(i)–(v). The ALJ begins, of course, at step one. If it yields an affirmative answer (i.e., the claimant is working), the claimant is not disabled, and the inquiry ends. If step two yields a negative answer (i.e., the claimant does not have a severe impairment), the claimant is not disabled, and the inquiry ends. *See id.* §416.920(a)(4)(i)–(ii). Step three, however, is dispositive: If the claimant's impairment appears on a listing, the claimant is considered disabled and eligible for benefits. *See id.* § 416.920(a)(4)(iii). If the claimant's impairment does not appear on or medically equal a listing, the ALJ crafts an "RFC Assessment," which analyzes "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [their] impairment." *Moore v. Colvin,* 743 F.3d 1118, 1121

(7th Cir. 2014). If either steps four or five yield an affirmative answer (i.e., the claimant can perform their old job or adjust to a new one in light of the RFC), the claimant is not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv)–(v).

The claimant has the burdens of production and persuasion through step four. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). At step five, the burden shifts to the Commissioner to show that the claimant can engage in some type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II.    Standard of Review

A court's function on review is limited to determining whether the ALJ's findings are supported by substantial evidence and based upon proper legal criteria. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, Courts may not try the case de novo or supplant the ALJ's factual findings with their own. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). As such, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence, in turn, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (explaining that the threshold "is not high"); *Schneck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) ("Substantial evidence may be less than the weight of the evidence, and more than a scintilla." (citation modified)). Yet, although the ALJ's

decision commands deference, courts may not simply "rubber stamp" it. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

The Seventh Circuit has emphasized that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Instead, ALJs need only "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review.'" *Id.* at 1054 (alteration in original) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary"—not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Therefore, courts reviewing for substantial evidence may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [their] judgment for the ALJ's determination so long as substantial evidence supports" the decision under review. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

In short, the ALJ must build "an accurate and logical bridge" between the evidence in the record and his conclusions. *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013).

## BACKGROUND

### I.    Dawn

Dawn was born in 1964, (R. at 240[1]), and has a high-school education, (R. at 258). She has worked in various roles, including as a controller at a car dealership and a bookkeeper—both for a manufacturing company and in a freelance capacity (R. at 258.) On a function report that Dawn completed as part of the application process, she claimed to be unable to work primarily due to sharp, shooting pain in her feet. (R. at 277.) She explained that the pain in her feet makes it difficult to walk, and that she also experiences constant numbness in her toes and fingertips. (R. at 277.)

### II.    Procedural History

In July 2022, Down filed two applications with the Social Security Administration—one for disability benefits, the other for supplemental security insurance—alleging that she has been disabled since April 1, 2022. (R. at 17.) Her application was initially denied in June 2023 and denied upon reconsideration in November 2023. (R. at 24.) She then requested a hearing before an ALJ, which took place in June 2024 (R. at 38.) Present at that hearing were Dawn, her attorney, and a vocational expert. (R. at 38.)

After the hearing, the ALJ issued a written opinion concluding that Dawn was not disabled and therefore not entitled to disability benefits. (R. at 31.) In response, Dawn sought review of the ALJ's decision with the Appeals Council, but her request

---

[1] "R." refers to the Certified Administrative Record filed on September 29, 2025. (Doc. 7.) The page numbers refer to the black page numbers at the bottom right of the transcript, rather than the green page numbers generated automatically by CM/ECF at the top right of the page.

was denied. (R. at 1.) Dawn then filed a complaint in this Court to challenge the ALJ's decision. (Doc. 1.) Dawn timely filed her brief, (Doc. 10), and the Commissioner responded, (Doc. 12).

### III.    The ALJ's Decision

In his opinion, the ALJ used the five-step evaluation process outlined above to determine whether Dawn was disabled. At step one, he determined that Dawn has not engaged "in substantial gainful activity" from her alleged onset date of April 1, 2022. (R. at 20.) At step two, the ALJ found that Dawn had three severe impairments: (1) neuropathy in the hands and feet; (2) bilateral carpal tunnel syndrome; and (3) hypothyroidism. (R. at 20.) At step three, the ALJ concluded that none of those impairments met or medically equaled any of the listed impairments. (*See* R. at 23–24.) Before proceeding to steps four and five, the ALJ crafted the following RFC assessment:

> [Dawn] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant cannot climb ladders, ropes, or scaffolds; the work cannot involve more than occasional balancing on uneven ground; and [Dawn] cannot engage in more than frequent handling and fingering bilaterally.

(R. at 24.) At step four, the ALJ found that Dawn's RFC allows her to perform her past relevant work as a controller. (R. at 30.) Based on the ALJ's conclusion at step four, he determined that Dawn was not disabled. (R. at 30–31.)

### DISCUSSION

Dawn is not a lawyer, so the Court reads her brief "liberally." *Stevens v. Navistar Int'l Transp. Corp.*, 244 F. Supp. 2d 906, 910 (N.D. Ill. 2002). But that does not absolve Dawn from complying with the rules of procedure. *Cady v. Sheahan*, 467

F.3d 1057, 1061 (7th Cir. 2006). The rules governing social security appeals are set forth in Title XIV of the Federal Rules of Civil Procedure and are collectively entitled, "Supplemental Rules for Social Security Actions Under 42 U.S.C. § 406(g)." As relevant here, Rule 5 provides that social security proceedings in federal court are "presented for decision by the parties' briefs." The Rule elaborates that "[a] brief must support assertions of fact by citations to particular parts of the record." Dawn's brief is a one-page email with no citations to the administrative record, the ALJ's opinion, or pertinent legal authority. It thus violates Rule 5.

In a similar vein, the Seventh Circuit has held that social security claimants waive arguments that are either "perfunctory and undeveloped" or "unsupported by pertinent authority." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). For reasons discussed, the Court does not hold Dawn's brief to the "stringent standards" it demands of briefs drafted by lawyers. *Haines*, 404 U.S. at 520. But neither will the Court, of its own accord, conduct a de novo review of the ALJ's opinion. In short, the Court construes Dawn's brief "liberally"; it will not make arguments for her. *Stevens*, 244 F. Supp. 2d at 910.

Dawn begins by recounting the symptoms that she experiences as a result of her neuropathy and carpel tunnel syndrome. (Pl. Br. 1.) She explains that she lives in an apartment; uses bars installed in the shower; uses special gloves when she prepares meals; that she has fallen in the past; and that walking is painful. (Pl. Br. 1.) She elaborates that she has worked in accounting since she was in high school, that she has a passion for the profession, and that she "would love to be employed in

the field again." (Pl. Br. 1.) But because of her carpel tunnel syndrome and other impairments, she is no longer able to type. (Pl. Br. 1.) Dawn claims that she "cannot walk for even short periods of time" and cannot ascend stairs. Finally, she explains that she is taking the highest dose of medication available to her. (Pl. Br. 1.)

The Court sympathizes with Dawn's situation. But a review of the ALJ's decision demonstrates that he *credited* her allegations to a significant degree. Indeed, the ALJ limited Dawn to sedentary work—the lowest exertional category enumerated in the Social Security regulations. *See* 20 C.F.R. § 404.1567(a); *see also Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994) (explaining that sedentary work requires "primarily sitting, some walking and standing, and minimal lifting"). In doing so, the ALJ acknowledged Dawn's pain symptoms, her difficulty walking, and her carpel tunnel syndrome. (R. at 25.) He correctly observed that sedentary work "represents a significantly restricted range of work" and is therefore appropriate for individuals with medical impairments that cause "very serious" functional limitations. (R. at 29.) Dawn fell into that category of persons, the ALJ reasoned, because the combination of her diagnoses, subjective complains, and objective findings show significant limitation.

That said, the evidence did not establish that Dawn was as limited as she claimed to be. (R. at 29 (explaining that Dawn's testimony was not "entirely supported by the medical evidence.").) Evidence undermining Dawn's claims included her relatively conservative treatment, the lack of assistive devices for ambulation, and— critically—the fact that Dawn's "musculoskeletal and neurological examinations have

been mostly unremarkable." (R. at 30.) Finally, the ALJ noted that Dawn's "progress and improvement has been noted throughout the record"; her "gait and motor function has been described as normal"; and the records reveal that Dawn "was able to perform personal care tasks independently, use public transportation, and keep her own room clean." (R. at 30.) In short, the ALJ ascribed significant limitations to Dawn's ability to work, but ultimately concluded that she was able to perform a restricted range of sedentary work.

In challenging an ALJ's opinion, claimants may not "simply point to evidence the ALJ considered and rejected and ask" the Court to assign greater limitations. *Dzafic v. Kijakazi*, No. 22-2090, 2023 WL 2536340, at *5 (7th Cir. Mar. 16, 2023)). That principle forecloses Dawn's challenge. Indeed, each of the symptoms and diagnoses that she discusses in her brief—pain, carpel tunnel, and treatment protocols—were discussed by the ALJ in performing his RFC assessment. For example, Dawn observes that she suffers from neuropathy. Yet the ALJ, at step two, agreed: He found that Dawn's neuropathy was a "severe impairment," meaning that it "significantly limits" Dawn's "ability to do basic work activities." 20 C.F.R. § 404.1520(c). The ALJ nonetheless found that, despite her impairments, the evidence establishes that Dawn was able to perform her previous job as a controller. Dawn has not offered a concrete reason why the ALJ erred in doing so.

The Commissioner argues that the ALJ "reasonably concluded that the evidence showed" that Dawn could perform her previous work. (Doc. 12 at 1.) The Commissioner also observes, correctly, that this Court lacks the power to "reconsider

9

facts, reweight evidence, or resolve conflicts"; instead, its role is limited to asking whether the ALJ "grappled with evidence favorable to the claimant." (Doc. 12 at 3 (quoting *Chrisman v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025)).) Because the ALJ grappled with each category of evidence that Dawn cites in her brief, his decision was supported by substantial evidence—that is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. That determination ends this Court's inquiry.

## CONCLUSION

The Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter judgment and close this case.

*So ordered.*

Entered this 10th day of June 2026.

s/ Ronald L. Hanna
Ronald L. Hanna
United States Magistrate Judge